[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
The defendant has filed a Motion to Suppress the oral statements he gave to Yale-New Haven Hospital police officer Mark J. Foster on November 9, 1993. As such, he has the burden of showing that the conversation with Foster amounted to an interrogation and, because of the. admitted absence of a Miranda warning, it should be suppressed.
The facts concerning his arrest are not in dispute. At approximately 2:15-2:30 a.m. on November 9, 1993, he was arrested for an attempted robbery upon an elderly gentleman. Apparently, family members of the victim came to his rescue and the defendant was badly beaten. After being taken to the West Haven Police Department for booking, he was then transported to Yale-New Haven Hospital by E.M.S. personnel to investigate his injuries. It was at the hospital that he had a conversation with Foster, which is the subject of this motion.
The defendant and Foster both testified at the hearing and their versions of what took place were at opposite poles.
Foster testified that at some point he entered the trauma room, where the defendant was, for purposes of getting his name, address and social security number which he had failed to provide CT Page 7257 or to put restraints on the defendant. After getting those vital statistics, Foster testified that the defendant, without any prompting or questioning, first asked how the old man was and, then again, with never a question asked, recounted parts of his past, his reasons for being in West Haven that night and his complicity the alleged robbery.
The defendant testified that he gave the hospital authorities the information they needed, was taken for x-rays and a CAT scan and thereafter, when he was returned to the trauma room, he was confronted by Foster who, after asking him for his vital statistics, asked him what he was doing in West Haven that night. The defendant claims that he asked Foster if he was a police officer and Foster responded that he was a security officer. The defendant claims that he asked Foster if he needed a lawyer and was told, "No." Thereafter, in response to questions, he implicated himself in the attempted robbery and that the last thing he said to Foster was, "How is the old man?" Defense counsel offered two exhibits into evidence: Foster's statement given on November 9, 1993, and a portion of the defendant's hospital records of November 9, 1993, along with the testimony of the attending physician.
The state argues that the defendant's testimony was not believable because of his interest in the case and to do anything other than deny the motion would be tantamount to labelling Foster a perjurer.
The defendant is entitled to have his testimony evaluated by the same criteria as any other witness, and that includes its accuracy, its consistency, its reasonableness, and its believability. The defendant's testimony met those criteria and the only negative factor was and is his interest in the outcome on the motion.
Foster's testimony, on the other hand, had lacked accuracy, reasonableness and consistency in many respects. In saying so, the court is in no way implying that Foster intentionally fabricated any testimony.
Initially, when asked when the conversation at the hospital took place, he said it was around 2 a.m., which was a time before the defendant was even arrested. The hospital records, as well as the defendant's testimony, indicated he arrived at the hospital at 3:15 a.m., went to the trauma room initially at 3:45 a.m. from which he was taken for x-rays and a CAT scan, returning to the CT Page 7258 trauma room about 5:15 a.m. It was after that time that he apparently met Officer Foster.
Next, Foster claims that he went to see the defendant because someone in the registrar's office told him that the defendant had refused to identify himself or he went in to place restraints on the defendant. As to the first reason given, there is absolutely no corroboration for the fact that the defendant refused to provide his personal information. To the contrary, the defendant testified he gave this information to the West Haven Police, the E.M.T. personnel and to the hospital personnel. The medical records confirm this and there is no indication in those records that the defendant was uncooperative. At the adjourned hearing, the state offered no support or testimony for Foster's position on the issue. In addition, there was a West Haven police officer guarding the defendant right outside his bed who had access to this information.
Foster's other justification for being in the defendant's presence was to possibly place him in restraints of some kind. But his memory is no better. He doesn't recall if the defendant was already in restraints when he entered; he doesn't remember if he placed him in restraints. He does state that if he placed him in restraints, he would have to file a special report of that fact that would be permanently logged. No such report was ever produced. This leaves the court in doubt as to the validity of the reasons for the officer's entry into the defendant's cubicle.
Most importantly, however, Foster testified that after getting the vital statistics from the defendant and while Foster was about to leave, the defendant initiated the conversation by asking Foster how the old man was. That was significant to Foster, as it might logically follow that the defendant then began to bare his soul. The defendant testified that the question about the old man's condition concluded his conversation with Foster. A review of Foster's written statement (State's Exhibit 1) given on November 9, 1993, confirms the defendant's version of that fact and not Officer Foster's.
Based upon a review of all the testimony, the lack of corroboration of Foster's testimony, its inherent unreasonableness under the circumstances then existing, the court finds that the defendant has met the necessary burden of establishing that there was an interrogation that took place in the absence of a Miranda warning or counsel present, and the defendant's oral statement given to Foster on November 9, 1993 is suppressed. CT Page 7259
Gormley, J.